IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BILLY WAYNE PITTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE ACTION NO.: 2:05-CV-337-RDP |
| ) | |
| STEWARD MACHINE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The court has before it Defendant Steward Machine Company's ("Steward") Motion for Summary Judgment. (Doc. #17). The motion has been fully briefed and was deemed submitted, without oral argument, on January 6, 2006. (Doc. #5, Doc. #23). The court also has before it Steward's Motion to Strike (Doc. #22) filed on December 23, 2005, and responded to by Plaintiff (Doc. #24) on January 6, 2006. For the reasons outlined below, the court finds that the Motion for Summary Judgment is due to be granted, and that the Motion to Strike is moot.

**I.    Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[1]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02. The court is aware that the summary

---

[1]Although a claim of discrimination under the Age Discrimination in Employment Act of 1967 (the "ADEA") can be established by direct or circumstantial evidence, *Jones v. BE & K Engineering Co.*, 146 Fed. Appx. 356, 358-59 (11th Cir. 2005), Plaintiff only argues that he has established a circumstantial case of discrimination. (Doc. #20 at 7-8).

judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

## II.     Relevant Undisputed Facts[2]

Steward provides complete manufacturing turnkey responsibility by detailing, drawing, welding, stress relieving, machining, gear cutting and assembling in-house. AF No. 1.[3] Whitney ("Whit") Debardeleben is President and CEO of Steward. (Doc. #19 at Ex. J at 7).

### A.     Plaintiff's Employment at Steward and the Composition of the Maintenance Department

On January 27, 1988, Plaintiff Wayne Pitts applied for a job with Steward. AF No. 3. Shortly thereafter, Steward hired Plaintiff as a maintenance repair assistant. AF No. 4. As a maintenance repair assistant, Plaintiff's responsibilities included maintaining and repairing all the buildings and machines at Steward's plant I. AF No. 5. At the time that Steward hired

---

[2]These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted). If facts are in dispute, they are stated in the manner most favorable to Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). The court has also noted when material facts are in dispute.

[3]The designation "AF" stands for "admitted fact" and indicates a fact offered by Steward that Plaintiff has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Whenever Plaintiff has adequately disputed a fact offered by Steward, the court has accepted Plaintiff's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Steward's Statement of Facts as set forth in Doc. #18 and responded to by Plaintiff in Doc. #20. Similarly, the designation "AAF" stands for "additional admitted fact" and corresponds to Plaintiff's Statement of Facts contained in Doc. #20 and responded to by Steward in Doc. #23. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

Plaintiff, two other persons worked for its maintenance department: Don Vinson (head of maintenance) and Michael Busk (maintenance lead man). AF No. 6; AF No. 7.

In 1988 or 1989, Steward employee Sammy Kelly transferred into the maintenance department. AF No. 8. In April 1990, Steward hired James Day as a maintenance repair apprentice. AF No. 9. In 1991, Day began to work the night shift on a permanent basis. AF No. 12. In 1997 or 1998, Day returned to the day shift upon Busk's dismissal from Steward. AF No. 13. Steward hired Wade Heavington to takeover the night shift position vacated by Day. AF No. 14.

Kelly became the head of maintenance upon Vinson's departure. AF No. 15. In February 2001, Kelly hired the father of Wade Heavington, Joe Heavington to work in the maintenance department. AF No. 16. About one year later, Kelly transferred Russell Guild from the assembly department to maintenance to perform climbing-related duties, which Day was no longer able to handle due to doctor-mandated restrictions. AF No. 17; AF No. 18.

**B.     The Reduction-In-Force**

During 2002 and 2003, Steward unexpectedly lost several big jobs for clients, including a $3.2 million contract and a $1 million contract, which resulted in a lack of work. AF No. 19; AF No. 29. Steward's production decreased from $31,211,991.00 in 2002 to $17,548,377.00 in 2003, while its sales decreased from $4,758,571.00 in 2002 to $3,407,139.00 in 2003. AF No. 27; AF No. 28. In the spring of 2003, Steward first began discussing the possibility of a reduction-in-force ("RIF"). AF No. 20.

In June 2003, in an effort to avoid a RIF, Whit DeBardeleben reduced the hours of plant employees, including Plaintiff, from forty hours to thirty hours per week. AF No. 23. Nonetheless, in February 2004, Whit DeBardeleben informed the Steward employees, including

4

Plaintiff, that Steward would have to implement the RIF and eliminate jobs. AF No. 30. Steward hired Charles Wilkinson, an outside Human Resources consultant, to analyze the persons selected for the RIF and ensure that Steward was in compliance with anti-discriminatory laws. AF No. 42. Every employee was considered for the RIF, taking into account the present workload in the shop and any future potential workload. AF No. 32.

Therefore, on February 11, 2004, with the advice of Wilkinson, Steward laid off twenty-five employees, including Plaintiff. AF No. 44. At the time of the RIF, Plaintiff was 56 years old.[4] Steward employed six persons in the maintenance department immediately before the RIF: Kelly (head of maintenance); Joe Heavington; Guild; Day; Plaintiff; and Wade Heavington (night shift). AF No. 33. Steward does not dispute that Plaintiff was the employee with the most seniority in the maintenance department. AAF No. 17. Day was also let go from the maintenance department as part of the RIF. At that time he was age 55.[5] It is undisputed that but for the downturn in business, Plaintiff, Day, and others still would have been eligible to hold a position with Steward. AF No. 46.

Steward contends Plaintiff was selected for the RIF because it believed that Wade Heavington, Joe Heavington, and Guild were better than Plaintiff at troubleshooting and

---

[4]Prior to the RIF, 85 of Defendant's 118 employees were over the age of 40. Defendant terminated employees who were younger than Plaintiff, including Henry Brown (32); Stacey Gillian (29); and Christopher Langley (35). It also retained employees who were older than Plaintiff, including George Jackson (68); James R. Brown (61); Larry Wade (61); Simmes Bevill (62); Jerry F. Hampton (61); Rachel Hill (61); Shirley Scrivner (63); Jerry Shivers (61); and Charles Whittington (64).

[5]Day has also filed suit against Defendant claiming age discrimination. *See Day v. Steward Machine Company*, 2:05-CV-334-WMA.

repairing CNC machines.[6] Plaintiff testified that he did not have any difficulty repairing CNC Machines. AAF No. 11. Day testified that he "did not observe" Plaintiff's having any problems with repairing the CNC machine and that, based upon what he had observed, Plaintiff "was very good at" it. (Doc. #21 at Ex. 12 ¶ 7). Day also criticized Guild's job performance in several different areas. (Doc. #21 at Ex. 12 ¶¶ 8-12).

At the time of the RIF, Steward amended its 401(k) plan so that employees who were eliminated in the RIF could obtain their benefits, and Steward also provided a career transition program to employees affected by the RIF. AF No. 47; AF No. 48. Prior to the RIF, the average age of the employees at Steward's main plant was 46.5; after the RIF, the average age was 44.97. AF No. 53; AF No. 54. Steward recalled back to work only one employee after the RIF – Emmit Kerr, who was a fifty-four year old crane operator. AF No. 56. On March 19, 2004, Steward applied for assistance with the Department of Labor due to its loss of business. AF No. 58.

### C. Plaintiff's Claims

On February 27, 2004, Plaintiff filed an EEOC charge against Steward alleging age discrimination. (Doc. #19 at Ex. R). On July 30, 2004, another former Steward employee, Lee McGhee, instituted an action in the United States District Court for the Northern District of

---

[6]The court acknowledges that Plaintiff disputes this particular fact. However, reviewing the cites to the evidentiary record, while Plaintiff shows that he and Day disagree with Steward's assessment of his work (*see, e.g.*, Doc. #19 at Ex. A at 40 (Plaintiff's testifying that he did not have difficulty repairing CNC machines)), Plaintiff has not demonstrated a material factual dispute over Steward's belief as to Plaintiff's deficiencies. For example, while Kelly maintains that he was not involved in the RIF decision affecting Plaintiff, he undisputedly testified that Plaintiff lacked skills in the area of troubleshooting and that he had previously discussed this particular performance issue with Whit DeBardeleben. (Doc. #19 at Ex. D at 83). Moreover, it is undisputed that Whit DeBardeleben also discussed Plaintiff's performance with David Shugart (AF No. 40) and that Shugart recalls sharing with Whit DeBardeleben his view that Plaintiff had a hard time with CMC machines and climbing. (Doc. #19 at Ex. L at 273-74). It was based upon this collective information that Whit DeBardeleben states he selected Plaintiff for the RIF. AF No. 41.

Alabama against Steward for age discrimination, and the case was assigned to the Honorable William M. Acker. AF No. 59; (Doc. #1 in 2:04-CV-02349-WMA). On August 4, 2004, McGhee amended his Complaint to add nine former Steward employees, including Plaintiff. (Doc. #2 in 2:04-CV-02349-WMA). On February 11, 2005, Judge Acker severed the employees' claims into ten separate cases (Doc. #11 in 2:04-CV-02349-WMA), and Plaintiff's case was assigned to the undersigned.

On April 8, 2005, Plaintiff moved to amend his Complaint to add a claim for retaliation under ERISA.[7] (Doc. #3). The court granted the motion on April 11, 2005.

### III.    ADEA Claim

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to fall under the ADEA's protections, an employee must be "at least 40 years of age." 29 U.S.C. § 631(a). The Eleventh Circuit has adopted a variation of the *prima facie* case standard articulated by the Supreme Court for Title VII claims in *McDonnell Douglas* for cases arising under the ADEA. *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir.1992). "Generally, a plaintiff in a job-reduction case can establish a *prima facie* case by demonstrating: (1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer

---

[7]ERISA is an acronym for the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

7

intended to discriminate on the basis of age in reaching the decision at issue." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990); *see also Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003). "Where a particular job position is entirely eliminated for nondiscriminatory reasons, for the plaintiff to prevail against the employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Earley*, 907 F.2d at 1083.

Here, there is no dispute that Plaintiff was in the protected age group and that he suffered an adverse employment action. Nevertheless, the court finds that Plaintiff has failed to establish a *prima facie* case, because, under the third prong, he has failed to show evidence of discriminatory intent.[8]

### A.   Evidence of Discriminatory Intent

The court finds that Plaintiff has failed to present evidence of discriminatory intent to fulfill the third prong of his *prima facie* case. To satisfy the intent requirement, "the evidence

---

[8]The court notes that the question of whether Plaintiff has even satisfied the second prong of the RIF *prima facie* case is a very close call. The court assumes, without deciding, that Plaintiff has successfully established this requirement. *Compare Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1442 (11th Cir. 1998) ("As previously noted, our case law expressly holds that, where a plaintiff contends that his position has been consolidated or reassigned to other employees, as has been alleged in this case, he may establish a *prima facie* case by demonstrating that he was qualified for his current position or to assume another position at the time of discharge[.]") *with Hallman v. Reynolds Metals Co.*, 2000 WL 682887, at * 3 (N.D. Al. 2000) (Blackburn, J.) ("The plaintiff and defendant dispute whether [plaintiff's] previous position was eliminated, or merely consolidated []. Viewing the evidence and drawing reasonable inferences favorable to the plaintiff, this court finds that there is no genuine issue of material fact as to whether [plaintiff's] position was eliminated. Her position was eliminated, with some duties going to [another employee's] position and other duties transferred to [another office location]."); *see also Minton v. American Bank Ins. Group*, 2003 WL 21303330, at *1 (11th Cir. Feb. 6, 2003) ( "[Another employee], Unterreiner[,] absorbed some, but not all, of Minton's responsibilities. He assumed none of Minton's supervisory duties, nor did he assume Minton's title. Minton's former duties were scattered among several employees, some, like Unterreiner, younger than Minton, and some within the same age group. Accordingly, we find that Minton's position was eliminated.").

must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining a plaintiff because of his age, or (2) that defendant regarded age as a negative factor in such consideration." *Allison v. Western Union Tel. Co.*, 680 F.2d 1318, 1321 (11th Cir. 1982) (internal citations omitted). The Eleventh Circuit has noted that an employee "face[s] a difficult burden" of showing discriminatory motive in an age discrimination case when the primary decisionmakers are "well over age forty and within the class of persons protected by the ADEA," as they are in this case. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991). Shugart, who was 48, provided input, and Whit Debardeleben, who was 52, decided to eliminate Plaintiff's position. Thus, they were both members of the protected class at the time of the RIF.

Plaintiff's main evidence that he believes suggests discriminatory intent is the repeated use by Kelly, Shugart, and Whit DeBardeleben of the term "old man" to refer to him and other Steward employees at work. The court finds this evidence does not create a material issue of fact. To be sure, the Eleventh Circuit has held that such age-negative comments that fall below the standard required for direct evidence[9] can nevertheless take an ADEA plaintiff through the summary judgment threshold. But the Eleventh Circuit reached that conclusion in a case where the age-negative comments were coupled with the company's failure to move the plaintiff to another available job. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987) (noting that failure to move plaintiff to another job raises issue for trial "[w]hen coupled with the age-related comments allegedly made by the supervisors"). In this case, however, there were no

---

[9] As noted earlier, Plaintiff has presented his discrimination case as only a circumstantial one. (Doc. #20 at 7-8).

available positions for which Plaintiff applied and thus no failure on behalf of Steward to transition Plaintiff into an available position.

Thus, this court is left only with stray "old man" comments unrelated to the decisionmaking process – comments which the Eleventh Circuit has held are insufficient standing alone to establish discriminatory intent. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 611 (11th Cir. 1987) (holding supervisor's statement of "at your age, I don't believe you could pass [a physical examination]" is "too attenuated" to employer's hiring practices to be of any "legal significance"). Moreover, the "old man" references in this case appear to be nothing more than a nickname used by numerous Steward employees to refer to each other – not "age-negative" comments that indicate heart-felt discriminatory animus. Numerous Steward employees testified that they, or others they know, have been called "old man" by another Steward employee on at least one occasion. (Doc. #21 at Ex. 8 at 64-66; *id.* at Ex. 10 at 156-57; *id.* at Ex. 9 at 114; *id.* at Ex. 13 at 33; *id.* at Ex. 6 at 84; *id.* at Ex. 7 at 74-77).

Plaintiff's suggestion that the statistical evidence reveals discriminatory intent also misses the mark. The Eleventh Circuit has held that "[a] *prima facie* case may be established only when there is a basis for inferring that discrimination is the reason for the employment decision and . . . the fact that the replacement was younger than the plaintiff [is not] enough, standing alone, to give rise to that inference." *Pace v. Southern Railway Sys.*, 701 F.2d 1383, 1390 (11th Cir. 1983). Moreover, "'[i]f the replacement is only slightly younger than the plaintiff, then it is less likely that an inference can be drawn.'" *id.* (quoting *Douglas v. Anderson*, 656 F.2d 528, 533 (9th Cir. 1981)).

At the time of the RIF, Plaintiff was 56 years old. Day, who was also let go, was 55. But this is not a case in which older workers were discharged and much younger workers were

retained. The retained day-shift maintenance employees who assumed the duties of Plaintiff were all over forty years of age: Kelly, the foreman, was 48; Joe Heavington was 55; and Guild was 47.[10] Therefore, all the persons taking on Plaintiff's job responsibilities were members of the ADEA's protected class.[11] Furthermore, the difference in age between Plaintiff and Joe Heavington was only one year. Although Plaintiff notes that the average age of employees let go during the RIF was 52.84, he fails to mention that the average employee age before and after the RIF was in the 40+ range and changed only 1.53 years, which is not "statistically significant[.]"[12] *See, e.g., Carter v. City of Miami*, 870 F.2d 578, 585 n.19 (11th Cir. 1989) (citing *Haskell v. Kamen Corp.*, 743 F.2d 113, 121 (2d Cir.1984)).

Additionally, the decisionmaker, Whit Debardeleben, at age 52, was within the protected age status and only four years younger than Plaintiff. The Eleventh Circuit has noted that an employee "face[s] a difficult burden" of showing discriminatory motive in age discrimination cases when the primary decisionmakers are "well over age forty and within the class of persons protected by the ADEA." *Elrod*, 939 F.2d at 1471; *see also Holston v. The Sports Authority, Inc.*, 136 F. Supp. 2d 1319, 1334 (N.D. Ga. 2000) ("[W]hen the decision makers are in the same

---

[10]While Steward did retain Wade Heavington, age 34, he worked the night shift in the maintenance department and did not take on the assignment of any job duties relating to Plaintiff.

[11]The court is mindful of the holding in *Corbin v. Southland International Trucks*, 25 F.3d 1545 (11th Cir. 1994), in which the Eleventh Circuit recognized that a defendant is not always entitled to summary judgment simply because a younger comparator is also a member of the protected class. However, the summary judgment facts of *Corbin* are dramatically different than those of this case. In particular, one of the plaintiff's supervisors and the key decisionmaker, reportedly said to the plaintiff, prior to his dismissal that "[a]t your age you cannot produce like you once could, and we are going to have make some kind of adjustment." 25 F.3d at 1549.

[12] The average age before the RIF was 46.5 and after the RIF was 44.97. (Doc. # 18 at Ex. G).

protected class as the employee complaining about an adverse employment decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about.") (citations omitted).

Viewing the evidence in the light most favorable to the Plaintiff, the court finds that Plaintiff has not presented adequate evidence of discriminatory intent from which a reasonable jury could conclude that Plaintiff's job was eliminated because of his age or that Steward "regarded age as a negative factor in such consideration." *Allison*, 680 F.2d at 1321. Accordingly, Plaintiff has failed to satisfy the third prong of his *prima facie* case, and Steward's motion for summary judgment is due to be granted for that reason.

**B.     Legitimate Non-Discriminatory Reasons**[13]

Alternatively, even if Plaintiff was able to meet his *prima facie* burden, summary judgment is due to be granted on Plaintiff's age discrimination claim because Steward has articulated legitimate, nondiscriminatory reasons for eliminating Plaintiff's position which Plaintiff has not demonstrated are pretextual. It is undisputed that Steward lost several projects in 2002 and 2003 which resulted in a lack of work and negative cash flow. Although Steward attempted to cut costs by other measures, it eventually concluded that a RIF was necessary.[14] The Eleventh Circuit has recognized that a RIF which results in the elimination of a position is a legitimate, non-discriminatory reason for termination of an employee. *Tidwell v. Carter*

---

[13] Plaintiff also bases his pretext argument on the age-related comments previously discussed. For the same reasons that those comments do not support a *prima facie* case for age discrimination, they fail to establish pretext.

[14] The RIF resulted in the elimination of 25 positions, including Plaintiff's.

*Products*, 135 F.3d 1422, 1426 (11th Cir. 1998); *Zaben v. Air Products & Chem., Inc.*, 129 F.3d 1453, 1457-58 (11th Cir. 1997).

Thus, the salient question is whether Steward had legitimate, nondiscriminatory reasons for selecting Plaintiff's position for elimination. It is undisputed that Steward did not have enough work to sustain all the employees in the maintenance department. Whit DeBardeleben selected Plaintiff for the RIF due to his understanding that Plaintiff had more difficulty troubleshooting and repairing CNC machines than the retained day-shift maintenance department employees.

In an attempt to show pretext, Plaintiff offers his own opinion and Day's opinion that he was able to perform all of his job duties without error or difficulty. This argument fails for at least two reasons. First, Plaintiff does not dispute that Kelly held the contrary belief that he had difficulty troubleshooting and shared that with Whit DeBardeleben before the latter decided to eliminate Plaintiff's position. Second, and in any event, Plaintiff's own opinion (or his co-worker's) about his performance is not relevant – "[t]he inquiry of pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997); *see also Gamble v. Aramark Uniform Servs.*, 132 Fed. Appx. 263, 266 (11th Cir. 2005) ("[O]pinions of . . . co-worker's [as to the employee's performance] are . . . close to irrelevant.") (quoting *Hawkins v. PepsiCo., Inc.*, 203 F.3d 274 280 (4th Cir. 2000)).

Accordingly, Plaintiff's efforts to show that he was able to handle the CMC machines and/or could effectively troubleshoot misses the mark because the crucial examination at the pretext level is whether the employer has honestly explained its actions, not whether the employer is "right:"

> Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA [or Title VII] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted). "[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory...." *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir.1982) (emphasis in original). *See also Jones*, 874 F.2d at 1540; *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir.1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated § 1981.").

*Elrod*, 939 F.2d at 1470.

Plaintiff also maintains that he has effectively shown inconsistencies in Steward's explanation for selecting him for the RIF. The issue for the court is whether Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that Steward's articulated rationale for eliminating Plaintiff's position is a pretext–a lie–to cover up intentional unlawful discrimination. He has not.

> In addressing the issue of pretext, the Supreme Court has stated:
>
> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original) (citations omitted). Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse employment decision, judgment as a matter of law in favor of the employer would still be appropriate if the record: 1) conclusively demonstrates some other, non-discriminatory basis for the decision; or 2) reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place.

While admittedly, the record is not in absolute lockstep, especially as it relates to evidence regarding Plaintiff's ability to handle the CMC machines,[15] none of testimony relied upon Plaintiff establishes any inconsistent statement regarding the reasons offered by Steward for its RIF decision. *See Tidwell*, 135 F.3d at 1428 (recognizing that while "identification of inconsistencies in an employer's testimony can be evidence of pretext," every difference offered by a plaintiff to show pretext may not meet that particular threshold or be "'necessarily inconsistent'"). At best, Plaintiff has brought into question the credibility (and recall ability) of Steward's witnesses regarding non-material matters. In explaining the line between inconsistencies that show lack of credibility and those that undermine nondiscriminatory reasons, the Eleventh Circuit compared the case of *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1993) with that of *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946 (11th Cir.1991), and stated:

> The difference between *Hairston* and *Brown* is the difference between evidence sufficient to overcome summary judgment and that which is insufficient. In *Brown* the court upheld summary judgment, holding that Honda's evidence supporting its articulated reason was extremely compelling and the plaintiff failed

---

[15]The court notes that while Plaintiff spends significant time challenging the ground offered by Steward relating to the CMC machines, the same is not true with respect to Plaintiff's ability to troubleshoot.

to produce sufficient evidence to allow a reasonable jury to find defendant's articulated reasons were false. We concluded, "[a]lthough the plaintiff has produced scattered pieces of circumstantial evidence, none of it, even taken as a whole, raises sufficient questions to undermine [defendant's] nondiscriminatory rationale." Beyond establishing his *prima facie* case, the Brown plaintiff merely denied the credibility of the defendant's witnesses. Accordingly, summary judgment was proper in Brown notwithstanding the finding that the plaintiff established a *prima facie* case.

*Hairston* and *Burdine* hold that the identification of inconsistencies in the defendant's testimony is evidence of pretext. Thus, the identification of a defendant's inconsistent statements has evidentiary value; mere denial of credibility has none.

*Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir.1994) (internal citation omitted).

Against this legal backdrop, the court finds that Plaintiff has not adduced sufficient evidence to lead a reasonable factfinder to conclude that Steward's reasons for eliminating Plaintiff's position were pretextual. Accordingly, for this alternative, independent ground, Steward's Motion for Summary Judgment is due to be granted as to Plaintiff's age discrimination claim.

## IV.     ERISA Retaliation Claim

Plaintiff's retaliation claim under ERISA also fails to survive summary judgment. Section 510 of ERISA provides: "It shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]." 29 U.S.C. § 1140. "A plaintiff need not show that the sole reason for the termination was to interfere with rights protected by ERISA; he need only prove that a specific intent to violate ERISA partly motivated the employer." *Nero v. Industrial Molding Corporation*, 167 F.3d 921, 927 (5th Cir. 1999). To establish a *prima facie* case of ERISA retaliation, Plaintiff must show that: (1) he is

entitled to ERISA's protection, (2) he was qualified for the position, and (3) he was discharged under circumstances that give rise to an inference of discrimination. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000).

In his Second Amended Complaint, Plaintiff contends that his job elimination was in retaliation for his substantial use of Steward's health plan (Doc. #11); however, during his deposition, Plaintiff testified that he did not believe that his dismissal was because of his use of the health plan. (Doc. #19 at Ex. A at 62-63). The last time that Plaintiff took advantage of Steward's health plan for any significant reason involved his treatment at a clinic for sleep apnea, which occurred approximately two years prior to his separation from the company; Plaintiff's wife had not sought treatment for a serious medical condition in the last seven years. (*Id.*). Plaintiff's retaliation claim fails for lack of *prima facie* evidence.

It is noteworthy that Plaintiff does not think he was let go because of his use of Steward's health plan. Moreover, Plaintiff has presented no evidence to suggest that the decisionmakers in this case had any knowledge of how much he (or his wife, for that matter) used the health plan. To the contrary, Whit DeBardeleben testified that he had no knowledge concerning which employees used Steward's health plan the most. (Doc. #19 at Ex. J. at 329-30). In retaliation cases, the employee must demonstrate "the employer was aware of the protected expression at the time it took adverse action," *Gold Smith v. City of Atmore*, 996 F.2d 1155, 1163 n.11 (11th Cir. 1993), and therefore Plaintiff's failure to present evidence of knowledge on the part of the decisionmakers is fatal to his ERISA retaliation claim. *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (stating that something unknown to decisionmaker cannot have motivated person to retaliate).

17

Furthermore, the lack of a "close temporal proximity between the employee['s] protected conduct and the adverse employment action is [in]sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart*, 231 F.3d at 799. The elapse of two years is far from "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001); *see also Higdo v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding that three month gap is insufficient to establish causal connection); *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (determining that three and one-half month period is legally ineffective to show causation). Accordingly, summary judgment in favor of Steward is appropriate on this claim due to Plaintiff's inability to demonstrate a *prima facie* case.[16]

## V. Conclusion

For the reasons stated above, the court finds that Steward's Motion for Summary Judgment is due to be granted. In light of the court's ruling on summary judgment, Steward's Motion to Strike is moot. A separate order will be entered.

**DONE** and **ORDERED** this ___8th___ day of February, 2006.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[16]The court also alternatively rules that even if Plaintiff were able to present a *prima facie* case of ERISA retaliation, his claim would nonetheless fail because he lacks sufficient evidence of pretext.